July Term, 1882, No. 165.                    January 19, 1883.

## Garrett *et al. v.* Green, Treasurer, &c.

1. The act of 26th September, 1761, amended by the act of 15th April, 1782, constitutes the Schuylkill Point Meadow Bank Company, a *quasi* corporation, authorized to levy assessments, and the charges, by virtue of its provisions, are so far of a public character as to prevent the statute from being unconstitutional.

2. It is not essential to the validity of such assessments that notice of their levy should be given to the owners of the lands.

3. Where the taxes were duly and regularly laid for seven years after the widow and devisee of a former owner acquired title, she is person-

ally liable for them; and the fact that they were not collected sooner by the managers constitutes no defense to an action against her.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas No. 3 of *Philadelphia County.*

Case by John I. Green, treasurer *pro tem.*, (substituted in place of Samuel Kilpatrick, deceased, treasurer,) to the use of the Schuylkill Point Meadow Bank Company, against John A. Garrett, executor of the last will and testament of George Hoffner, deceased, and Sarah A. Hoffner, sole devisee, to recover assessments for the years 1872, 1873, 1874, 1876, 1877, 1878, and 1879, for keeping up the banks upon meadow property. Pleas—*non-assumpsit*, and a special plea that the acts under which plaintiff claimed to recover were unconstitutional, and denying the right to recover as against Sarah A. Hoffner. The Schuylkill Point Meadow Company was created under the act of 26th September, 1761, which provides that Hugh Roberts and others are nominated, authorized, and appointed to divide the banks which surround and include a certain parcel of meadow land and marsh situated in the township of Passyunk, and allot how many perches of the said bank each owner or possessor of the said tract shall make, repair, maintain, and support in proportion to the number of acres of meadow he holds therein, allotting the part and proportion so to be made, repaired, maintained, and supported as near and convenient as may be to the land of each respective owner thereof.

The act further provides that said banks shall always be kept at least six inches above all tides; that the costs and charges thereof shall be paid by all the owners, occupiers, or possessors according to the number of acres that each of them shall hold, possess, and occupy; that the owners shall elect managers and a treasurer; that said managers shall have power to lay "such assessment and taxes on every acre of land belonging to the said company as they shall judge to be necessary for the benefit and security of the same;" that they are authorized to enter upon and inspect, at least four times in each year, all the banks, &c.; and if any part shall be in any manner insufficient "on such inspection and determination, the said managers shall give notice to and require the said owners or possessors, or their guardians, (if

minors,) and within the county of Philadelphia, forthwith to amend their, and each of their parts or allotments in such manner as they shall direct;" that if any owners or occupiers so warned shall refuse or neglect to repair, it shall be lawful for the said managers, with workmen, horses, &c., to enter and repair the same in such manner as they shall think fit and reasonable, and adjust and settle the expense thereof, and deliver to the said owners their respective bills; and in case of their refusal or delay of payment, they shall order the treasurer to advance so much out of the public stock as shall be sufficient; that the managers shall cause a true list of the names of all the said owners or possessors, with a true account of every acre of meadow in the aforesaid tract which they respectively hold, and shall furnish the treasurer with a true copy thereof, together with the sum per acre of the general assessment; and the treasurer shall cause public notice of the said rate or assessment per acre to be given at least ten days before the day of payment.

"Sec. 11. That if any of the said owners, possessors, or occupiers shall neglect or refuse, as aforesaid, to pay the several sums of money, together with the forfeitures arising thereon, which they respectively ought to pay at any time or times hereafter, for the space of twelve months after any of the days or times in which it ought to be paid; or shall have neglected or refused to make, amend, or repair his, her, or their part or share of the bank, so as aforesaid to them allotted, or shall have neglected or refused to re-imburse the treasurer for the time being, the necessary expense thereof, agreeable to the direction of this act; that then and so often it shall and may be lawful to and for the said treasurer, by direction of the said managers, or any three of them, in his own name, to sue all and every such person or persons so refusing or neglecting, for the respective sum or sums of money which he, she, or they ought to have paid by virtue hereof, by action of debt, if five pounds or under, before any justice of the peace of the county, or if above five pounds, in any court of record where the same may be cognizable, and give this act and the said assessment, or the said account, as the case may require, in evidence; and the said justice of the peace and the said court are hereby empowered and directed to give judgment and grant execution for the same, with costs of suit accordingly; to be levied on the tract or piece of marsh, meadow, or cripple belonging, as aforesaid, to such owner

or owners so neglecting or refusing, and delivered unto the managers for the time being, who, or any three of them, are hereby empowered and authorized to let out or rent any part of the said meadow belonging to any of the said owners who shall so neglect or refuse, or who shall not be found in the county as aforesaid, from year to year, for so long time as until the rent or rents arising therefrom shall, as nearly as may be computed, pay all such sum or sums of moneys so assessed, or so charged, together with all costs and forfeitures arising thereon for his or their neglect or refusal to pay the same as aforesaid, and no longer : *Provided always*, That in letting out the said meadow, the said managers do publicly notify the leasing thereof, and let the same to the highest bidder at private sale or bargain."

The above act was amended by act of April 15, 1782, (2 Smith's Laws, 44,) which provides :

SEC. 2. *And whereas*, It is found by experience that the mode of supporting the said bank by individual allotments is attended with divers inconveniences,

*Be it therefore enacted*,     *     *     *     That from and after the publication of this act, the several owners of meadow ground within the banks surrounding the said Schuylkill Point Meadows shall be, and they are hereby, released and discharged from making, repairing, maintaining, and supporting the several proper shares, parts, proportions, and quantities of the said bank to them allotted, in pursuance of the said recited act, at their own proper expense and charge, and of and from all penalties and forfeitures, by the said recited act annexed to the neglect thereof.

SEC. 3. *And be it further enacted by the authority aforesaid*, That immediately after the passage of this act it shall and may be lawful for the present managers of the said company to enter into and upon the said banks ; and if, upon inspection, it shall appear to them that any particular allotments thereof shall stand in immediate need of repair, then it shall be lawful for the said managers, without consulting the owners of the particular allotments which shall so require immediate repair, to enter upon the adjoining grounds with such workmen, horses, carts, implements, and tools as shall be necessary, and to dig and cast earth, or purchase other materials, and cause the said allotments of banks to be repaired so as to put them all in order and repair, as nearly as possible equal, at the several expenses and charge of each of the said owners of the said allotments which shall require such

repair, and to levy, recover, collect, and receive from each of them, respectively, the several amounts of the said respective expenses and charges, in the same manner, and under the same penalties and forfeitures, as the taxes for other purposes in the said recited act mentioned are directed to be levied, recovered, collected, and paid.

SEC. 4. And in order for the better and more certain and expeditious repairing and supporting the said bank in future, and for rendering the burthen and expense thereof more equal upon the said owners:

*Be it enacted by the authority aforesaid,* That from and after the publication of this act, it shall and may be lawful to and for the managers of the said Schuylkill Point Meadows, elected and to be elected in pursuance of the before-recited act, and they are hereby enjoined and required to enter upon and inspect the said banks, drains, and ditches, so often as they shall think necessary, but not less than four times in every year ; and if, upon such inspection, it shall appear to them that any part of the said bank stands in need of repair, whether from gradual decay or a sudden irruption of the water, or otherwise, then, and in such case, it shall and may be lawful for the said managers, without consulting the owners of the particular place where such repairs are wanting, to enter upon the adjoining grounds, with such workmen, horses, carts, implements, and tools as shall be necessary, and there to dig and carry earth, or purchase other materials for the repair and support of the said bank, (in a good, substantial, and sufficient manner, according to the directions in the said recited act contained,) at the joint expense and charge of all the said owners.　＊　　＊　　＊

SEC. 6. *And be it further enacted by the authority aforesaid,* That it shall and may be lawful for the said managers, elected and to be elected as aforesaid, from time to time to lay such assessments and taxes on every acre of land within the said bank as they shall judge necessary for repairing, maintaining, and supporting the same, and for the other purposes herein above mentioned, to be paid, collected, and recovered in the same manner, and under the same penalties and forfeitures, as the taxes for other purposes in the said recited act mentioned are thereby directed to be levied, recovered, collected, and paid.　＊　　＊　　＊　　＊　　＊　　＊

SEC. 8. *And be it further enacted by the authority aforesaid,* That so much of the said recited act as is herein and hereby altered shall be and is hereby repealed, and made null and void ; but all and every other

matter and thing therein contained shall be and remain in full force and virtue, as if this act were never made.

On the trial before LUDLOW, P. J., the following facts appeared:

George Hoffner, in the year 1853, became the owner of about thirty-two acres of land in the southern part of the city of Philadelphia, including about twelve and three quarter acres within the boundaries of the Schuylkill Point Meadow Company. He became a member of the company and so remained, paying his assessments until his death in May, 1871. By his last will and testament he devised all of his real estate to his wife, Sarah A. Hoffner, forever, and appointed John A. Garrett his executor. At the time suit was brought the devisee still owned the land. No notice of the assessments had ever been given to her or to the executor.

The Court charged the jury:

"The facts in this case are virtually admitted. The Schuylkill Point Meadow Bank Company was incorporated in the year 1761, and the object of the company was to raise a fund for the purpose of building a bank along the river Schuylkill in the southern part of this city, to keep the river from overflowing the meadows lying between the Schuylkill and Delaware rivers. This fund, according to the provisions of the act, was to be raised by the managers levying asssessments, from time to time, upon land lying within the limits of the company. These assessments were to be paid by the owners or possessors of said land.

"It is undoubtedly true that this company have extraordinary powers under their charter, and as this case will eventually turn upon the law, I will reserve those questions for future consideration. I will say to you, gentlemen, that the counsel for defendants lay some stress upon the point that the plaintiff has failed to show that Mrs. Hoffner's land has been benefited by the work done by the company, for the reason, as is contended, that the footing ditch along Hollander's creek has not been kept open so as to drain her land. For the purposes of this case I charge you, that if there was a general benefit to the land-owners by the work done by the company, that seems to me to be sufficient under the law; and I do not think the company were bound to keep the footing ditch along Hollander's creek open for the purposes of drainage. Neither do I think the company were bound to give Mrs. Hoffner notice of the levying of assessments. Now, gentlemen, if you believe that the work was done by the

[Garrett *et al. v.* Green, Treasurer, &c.]

company, as the plaintiff alleges, and about which there is no serious dispute, and that said work was necessary, then your verdict should be for the plaintiff, subject, of course, to the points of law submitted by the counsel for defendants, and which points I reserve for the court in banc."

The following points of law were reserved for the court in banc :

*First.* Whether the act of Assembly of September 26, 1761, and the supplement thereto, passed April 15, 1782, under which the plaintiff seeks to recover, are not in violation of the bill of rights and unconstitutional.

*Second.* Whether the said Garrett, executor, and said Sarah A. Hoffner, sole devisee, of George Hoffner, deceased, it having been shown that they were not members of said company, and have not assented to the laws or acts of said company, are bound by said acts of Assembly.

*Third.* Whether there can be a recovery against the defendants in this suit, under the following point, (3rd,) submitted by defendants, to wit : "That it is not the true intendment of the said acts of Assembly that the managers may suffer the assessments to remain unpaid for an indefinite time, finally to be collected from a new tenant or an innocent purchaser ; that prompt collection of the assessments from the proper parties is enjoined by the spirit of the act, rather than a loose and unwarranted construction for the enlargement of the powers of the managers."

*Fourth.* Whether the said Sarah A. Hoffner, being the sole devisee of George Hoffner, deceased, is bound by covenants between him and said company, she not being a member of said company.

April 11, 1882.—Verdict for plaintiff for $535 50, subject to points reserved.

The defendants moved for a new trial and for judgment *non obstante veredicto* upon the points reserved. The Court discharged the rule for a new trial, and refused to enter judgment for the defendants *non obstante veredicto.* By agreement of counsel the verdict was afterwards reduced to $338, and judgment entered thereon. The defendants then took out a writ of error, assigning as error the charge of the Court and the refusal to enter judgment for the defendants *non obstante veredicto.*

*Lewis Cassidy* and *Charles Davis* for plaintiffs in error.
The act of 1782, in not requiring notice to be given, does not repeal the notice required by the act of 1761. Amend-

ments must be reasonable and consistent with the object of the act of incorporation : Shields *v.* Ohio, 5 Otto, 321 ; Miller *v.* R. R., 21 Barb., 513.

The act of 1782, dispensing with notice, is unconstitutional, because it deprives a citizen of his property without " due process of law."

These acts should not be construed as to work injustice to those who were not parties to them.

Prompt collection of the assessment from the proper parties is required by the spirit of the act : Rutherford *v.* Maynes, 9 W. N. C., 561.

*Jerome Carty* for defendant in error.

In Rutherford *v.* Maynes, *supra*, an analogous act was held to be constitutional. The decision there was upon the point that the assessments could not be collected by distress from a tenant who went into possession after they were laid, or from any innocent purchaser. The assessments were made only for the years during which Mrs. Hoffner was owner, and therefore Rutherford *v.* Maynes does not apply.

JANUARY 29, 1883.—PER CURIAM : The defendant in error is a *quasi* corporation authorized by statute to levy the taxes in question. The charge is so far of a public character as to prevent the statute from infringing on the Constitution. The land is properly chargeable with the payment of these taxes. Mrs. Hoffner is the widow of the former owner of the land and the sole devisee thereof. The taxes were duly and regularly laid since she acquired title to the land. She became personally liable for the taxes, and the fact that she has not paid them sooner constitutes no defense against their payment now.

Judgment was correctly entered on the verdict.
Judgment affirmed.